

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2007

# Das v. UNUM Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2408

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Das v. UNUM Life Ins Co" (2007). *2007 Decisions.* Paper 1495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2408

_____

RITA DAS,

Appellant

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA and
THE PENNSYLVANIA HEALTHCARE GROUP INSURANCE TRUST

_____

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. Civil No. 04-0971
District Judge: The Honorable Timothy J. Savage

_____

Submitted Under Third Circuit LAR 34.1(a)
January 30, 2007

_____

Before: BARRY and ROTH, <u>Circuit Judges</u>, and
DEBEVOISE[*], Senior District Court Judge

(Opinion Filed: March 13, 2007)
_____

OPINION

_____

---

[*] Honorable Dickinson R. Debevoise, Senior District Court Judge for the District of New Jersey, sitting by designation.

**Debevoise, Senior District Court Judge**

Appellant, Rita Das ("Das"), brought an action against defendants, UNUM Life Insurance Company of America ("UNUM") and The Pennsylvania Healthcare Group Insurance Trust ("Healthcare Trust"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1001- 1461. She alleged that UNUM's termination of her long term disability benefits under a UNUM group disability policy (the "Policy") was arbitrary and capricious because UNUM's finding that her permanent hearing loss in both ears does not render her totally disabled under the Policy terms was not supported by substantial evidence.

The District Court denied Das's motion for summary judgment and granted defendants' motion for summary judgment. Das appealed *pro se*, alleging that both the administrative decision and the judgment of the District Court were erroneous as a matter of law because each was based on a labor market survey that contained erroneous and untruthful information. We will affirm.

## I. Background

Das has a Bachelor of Science degree in chemistry, a Master of Science degree in biochemistry, and a Ph.D. in molecular biology from Calcutta University. She began her employment at Thomas Jefferson University as a Research Assistant Professor in Neurosurgery in 1994. She worked as a bench scientist in a laboratory, studying human brain tumors. Her job duties involved performing research, overseeing medical

2

technicians, and teaching laboratory techniques to medical students.

In 1995, Das began to lose her hearing and in 1997 began using hearing aids. Within two years, her bilateral sensorineural hearing loss in both ears deteriorated to approximately 96%, and in 1999, Das took a medical leave of absence and applied for disability benefits.

The Healthcare Trust, administrator of Thomas Jefferson University's long term disability benefits program, had purchased a group disability policy from UNUM. The Policy provided for two definitions of disability, one applicable to the first 24 months of benefits, the other applicable to the period thereafter. For the first 24 months of benefits, the Policy's definition of disability is as follows:

> You are disabled when UNUM determines that
>
>> - you are limited from performing the <u>material and substantial duties</u> of your regular occupation due to your <u>sickness or injury</u>; and
>>
>> - you have a 20% or more loss in your <u>indexed monthly earnings</u> due to the same sickness or injury.

(S. App., Exh. C, p. 30 (emphasis in original)).

After 24 months of benefits have been paid, the Policy definition for disability shifts to an "any gainful occupation" standard, and benefits will continue only if:

> UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any <u>gainful occupation</u> for which you are reasonably fitted by education, training or experience.

(S. App. Exh. C, p. 30 (emphasis in original)).

3

The Policy defines "gainful occupation" to mean "an occupation that is or can be expected to provide you with an income at least equal to your gross disability payment within 12 months of your return to work." (S. App., Exh. C, p. 51). The test for the post-24-month period is no longer focused on the insured's ability to perform the duties of her own occupation. It is whether she is able to perform the duties of any gainful occupation for which she is reasonably fitted by education, training or experience.

UNUM determined, on the basis of information that Das supplied, that it was unsafe for a totally deaf person, such as Das, to perform laboratory research. Thus, UNUM found that she was limited from performing the material and substantial duties of her regular occupation due to her deafness and awarded her benefits for the first 24 months. After paying Das benefits for two years, UNUM conducted a review, as required by the Policy. It determined that there were a number of gainful occupations suitable for Das given her hearing loss, and her education, training and experience, and that, therefore, Das was no longer entitled to further benefits under the terms of the Policy.

On February 19, 2001, UNUM notified Das that to remain entitled to benefits after 24 months of payments, she must be unable to perform the material and substantial duties of any gainful occupation for which she is reasonably fitted by education, training or experience. In response, Das's attending physician, Dr. Thomas Willcox, advised UNUM that Das's condition restricted her from working in "any environment where her safety is compromised due to her hearing loss." He further advised that Das had limited work

4

capacity because she "cannot communicate through auditory channels," and that she "needs to be able to lip read and write."

On August 23, 2001, UNUM requested a Transferable Skills Analysis ("TSA") to further assess whether there was any gainful occupation suitable for Das. Based on the TSA, UNUM identified four suitable gainful occupations: Biochemist, Microbiologist, Geneticist and Writer, Technical Publications. UNUM notified Das of the results of the vocational review and that her benefits would end effective December 27, 2001. It also advised Das that she had the right to appeal the denial.

Das appealed, supporting her appeal with letters from Dr. Willcox and Dr. David W. Andrews, her former supervisor. Dr. Willcox gave his opinion that Das is incapable of working in Dr. Andrews's research laboratory because of safety concerns. Dr. Andrews, writing in the "capacity of Rita Das's physician and as an Associate Professor in the Department of Neurosurgery at Thomas Jefferson University" concluded that Das "should not continue her work as a molecular biologist" because of "very serious safety concerns."

On January 25, 2002, after reviewing these letters, UNUM upheld its denial, informing Das that i) Das had previously expressed an ability and interest in research publishing in a non-laboratory setting, and ii) she was capable of working in other gainful employment based on her education, training and experience. In response to Das's continued disagreement, UNUM ruled out any position requiring work in a laboratory and

5

ruled out the "writer, technical publications" position. It requested from its affiliate, GENEX, a labor market survey in which two additional occupations were identified: on-line college instructor and on-line scientific researcher.

In the course of this survey, GENEX communicated with a number of organizations that assist deaf individuals with employment, including the Massachusetts Commission for the Deaf, the New Jersey Department of Human Services, Gallaudet University, the New Hampshire Department of Vocational Rehabilitation, the California Department of Vocational Rehabilitation and the Pennsylvania Division of Vocational Rehabilitation. For the most part, these agencies agreed in general terms that work in on-line research and as an on-line instructor were occupations that "the insured could potentially perform" or "were working areas of exploration" or "appeared to be good choices."

GENEX communicated with six employers about the position of "instructor, on-line." These included Pennsylvania State University, University of Missouri, University of Phoenix, Seattle Pacific University, University of Massachusetts-Boston, and University of Florida. These universities almost uniformly responded that such a position existed, but in each case stated that it had no openings. One responded that it filled such a position from within the university.

Finally, GENEX communicated with seven employers about the position of "on-line editor, scientific literature." In its executive summary of the results of its inquiries,

the GENEX report stated:

> Six employers[1] were contacted about the position of <u>on-line scientific researchers</u>. Of the six, five employers hire telecommuting scientific researchers. One employer hired only on-site researchers. Three employers had opening for on-line researchers. The five employers that hire online research staff agreed that the claimant is a highly qualified applicant. Their only concern was whether the (sic) she has access to the technology necessary to perform the successful functions of the job.

GENEX set forth the results of its labor market survey in a June 10, 2002 report (S. App, Exh. B, pp. 408, et seq.). Relying on the report, UNUM reaffirmed its rejection of Das's long term disability claim. It so advised Das by letter dated June 13, 2002.

Das persisted in pursuit of her claim, retaining Dale G. Lattimore, Esq., to represent her. He obtained a copy of the GENEX report, and Das wrote to the various entities with which GENEX had communicated. Her letters in each instance stated:

> I am writing in connection of (sic) my difficulty in identifying a suitable job according to my education and experience as a Molecular Biologist and I was supplied with the name of your organization who help people with this kind of profound hearing loss in identifying suitable jobs accordingly. I am attaching a copy of my resume and a letter from my supervisor with whom I worked until 1999. If you can help me in identifying a suitable job according to my qualification and experience and a hearing loss of 96% in both ears. Essentially the job that accommodate (sic) deaf molecular biologist. Thank you.

(S. App., Exh. B, pp 362, et seq.).

These letters produced a few responses. The New Jersey Division of Vocational Rehabilitative Services offered to assist Das compensate for her hearing loss and to

---

[1] The executive summary referred to interviews of six employers. The preceding paragraphs of the Report described seven employer interviews.

secure employment. The University of Missouri responded that it could only hire University of Missouri faculty. O'Reilly & Associates, a publishing company, stated it had no way to help Das identify a suitable job. Sage Publications invited Das to submit an application for employment, advising her that "[s]hould a suitable opening later arise, we may contact you to determine your interest at that time." The University of Florida advised Das that there was no person there by the name of Dean Norman, to whom she had addressed her letter, and that in any event, the University did not provide the kind of services she requested. The California Department of Vocational Rehabilitation responded that it was not sure what Das was asking of it, commenting that since Das lived in New Jersey, it was "not at all sure how California can help you." The University of Phoenix Online stated, "We have reviewed your resume and although you have outstanding qualifications, we are unable to invite you to apply, at this time, based on our current needs."

In further pursuit of Das's cause, on December 21, 2002, Mr. Lattimore wrote to UNUM, noting the various agencies upon which the GENEX Report relied and stating, "[m]y client has spent the past four months trying to follow up with those agencies. To date she has been unable to identify or locate any job that exists with any of these agencies that she would be capable of performing. In fact, Ms. Das has been unable to locate any job at all that she can do with her disability." Mr. Lattimore asked for "prompt reconsideration of the decision to terminate Ms. Das's long term disability benefits." (S.

8

App., Exh. B, pp. 356, et. seq.).

UNUM responded to Mr. Lattimore's letter on January 17, 2003, noting that the material that Mr. Lattimore had submitted on December 21, 2002 addressed the availability of jobs within the two pertinent categories, not the capacity of Das to perform the jobs, which was the relevant question. UNUM stated that "[t]here has been no information submitted that would indicate that either of these two occupations does not exist within the national economy or that Ms. Das cannot perform these occupations due to her hearing loss." UNUM concluded that its previous decision to deny further benefits was correct and upheld it, noting "[y]ou have exhausted all administrative remedies in regard to Ms. Das's appeal for disability benefits." (S. App., Exh. B, pp. 346-47).

## II.  District Court Proceedings

Following the final rejection of her claim, Das brought this action under ERISA, asserting that the termination of her long term disability benefits was arbitrary and capricious because UNUM's finding that her permanent hearing loss does not render her totally disabled under the Policy terms was not supported by substantial evidence. Prior to ruling on UNUM's and Das's cross-motions for summary judgment, the District Court struck from the record five affidavits that Das submitted in support of her case.

The affidavit of David W. Andrews, M.D., FACS, Professor in the Department of Neurosurgery at Jefferson Medical College, stated that he had worked with Das for a period of nine years when she was a post-doctoral fellow and later when she was an

9

Assistant Professor in his Department. He described her work for him and then gave various opinions:

> Dr. Rita Das has never had any experience on (sic) on-line teaching and she is therefore <u>not</u> suited for any sort of on-line molecular biology instruction. I cannot fathom how she could teach this subject online or in a class, for either molecular biology undergraduate or graduate students, since bench research is the only training or experience she has had.
>
> By my review of her resume, and in my nine years of working with her, it is obvious that Dr. Das has no experience as a classroom teacher or instructor, nor as an on-line researcher. I do not see how she could be employed as an on-line researcher, since all of her research experience has been in a laboratory. She would be poorly equipped to assume a position involving these latter avenues of employment.

(Appellant's Reference 5).

The affidavit of Madhu Kalia, M.D., Ph.D., M.B.A., Professor in the Department of Biochemistry and Molecular Pharmacology at Jefferson Medical College, contained the following opinions:

> I have reviewed the credentials of Dr. Rita Das and note that her training and experience is in the field of molecular laboratory research, with no experience in classroom teaching. Her involvement with students has been limited to the lab, where she instructed a few students in lab techniques.
>
> Dr. Das is a native of India, and while her command of the English language is adequate for scientific work in the laboratory, I know that she would have considerable difficulty writing class notes, preparing handouts, writing exam questions and instructing students on-line.
>
> On-line instruction requires exceptional language skills as well as training and experience as a teacher in a medical or graduate school setting, and I note that Dr. Das has none of this experience and training.
>
> For these reasons, it is my professional opinion that the occupations of on-

10

line college instructor or on-line scientific researcher are unsuitable occupations for her.

(Appellant's Reference 5).

Besides these two affidavits, Das submitted affidavits of similar purport of Professor E. Premkumar Reddy of Temple University School of Medicine, Professor Subhasis Biswas of The University of Medicine and Dentistry of New Jersey and another one from Dr. Andrews. The District Court struck all of these affidavits.

Addressing the cross-motions for summary judgment, the District Court defined its task as "determin[ing] whether UNUM abused its discretion in finding Das, based on her education, work experience and training, is able and qualified to work in the alternative job positions UNUM identified for her." (Appellant's Ref. 1, Opn. p. 2). Noting that the denial of benefits under an ERISA qualified plan must be reviewed using a deferential standard and that where the plan administrator, as here, has discretion to interpret the plan and to decide whether benefits are payable, the fiduciary's exercise of discretion is judged by an arbitrary and capricious standard, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the District Court also noted that where an insurance company funds, interprets and administers a disability plan, the resulting self interest inherent in the relationship requires closer scrutiny. Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377 (3d Cir. 2000). The District Court applied the Pinto heightened review standard.

The District Court's opinion recited the extensive efforts that UNUM itself and through GENEX made to determine if Das was capable of performing gainful

11

occupations despite her disability, and the opinion recited the efforts that Das made to obtain employment in positions UNUM had determined Das was fitted to perform.

Having reviewed the evidence upon which UNUM relied, the District Court concluded:

> UNUM interpreted its policy in the context of its evaluation of Das' vocational abilities and former job duties. This interpretation of the policy's "any occupation" provision, even though it disfavors the insured, was reasonable. Because Das had the ability to perform the identified jobs, UNUM's application of its policy to those facts was not arbitrary and capricious.

(Appellant's Ref. 1, Opn. p. 19).

The District Court further held that UNUM reasonably interpreted its policy to require only that it demonstrate that positions were available in the national economy for which Das, with her disability, is fitted by reason of her prior work experience, training and education to perform. Das's inability to obtain a position was not controlling.

Finally, the District Court rejected Das's contention that procedural irregularities required that the Court lessen its deference to UNUM's decision making. She had argued that UNUM's Bayard's desire to be kept "in the loop" by GENEX demonstrated a lack of independence by GENEX. She also argued that GENEX's conducting successive surveys suggested goal-oriented studies designed to produce a finding of no disability. Das contended that UNUM provided GENEX with flawed and incomplete information about her prior job duties and failed to communicate with her former supervisor to determine whether she could perform the two alternative occupations. The District Court rejected

12

each of these criticisms as unwarranted.

Based on its findings and conclusions, the District Court denied Das's motion for summary judgment and granted UNUM's motion for summary judgment. Das appealed *pro se*.

The District Court had jurisdiction over this action pursuant to 29 U.S.C. §1132(a)(1)(B). We have jurisdiction to review the final judgment of the District Court pursuant to 28 U.S.C. §1291.

### III. <u>Discussion</u>

Das asserts three grounds for challenging the judgment of the District Court: i) the District Court erroneously struck the five affidavits that Das submitted in support of her motion for summary judgment and in opposition to UNUM's cross-motion; ii) the GENEX report upon which UNUM's determination and the District Court decision were based was replete with false and erroneous information; and iii) the Court's failure to consider the affidavits and its reliance on a false and erroneous report require that summary judgment in favor of UNUM be vacated.

The District Court's ruling as to the admissibility of evidence is reviewed under an abuse of discretion standard. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 749 (3d Cir. 1994). Das's contention that the GENEX report is replete with false and erroneous information is based primarily upon factual material presented neither to UNUM during the administrative proceedings nor to the District Court. Whether it may be considered on

13

this appeal presents a question of law. Abnathya v. Hoffmann - La Roche, Inc., 2 F.3d 40, 48, n.8 (3d Cir. 1993). With respect to the granting of UNUM's motion for summary judgment, we cannot affirm unless, viewing the facts in the light most favorable to the non-moving party, we are convinced that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

It will be assumed, without deciding, that the professors who provided the five affidavits were qualified to give opinions as to whether Das was qualified to be an on-line teacher in her field. Such an opinion was relevant to the investigation in which UNUM was engaged, and undoubtedly UNUM would have received and considered the affidavits had they been submitted to it. However, the affidavits were not submitted to UNUM, and UNUM relied on information about Das's teaching qualifications that Das herself had submitted and which had been submitted on prior occasions by her supervisors.

Judicial review of an administrative decision is limited to the evidence presented to the administrator. Keating v. Whitmore Mfg. Co., 186 F.3d 418, 421-22 (3d Cir. 1999). ERISA claimants must exhaust their administrative remedies. Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244 (3d Cir. 2002). A person appealing a denial of disability cannot use the district court as a vehicle to submit evidence he failed to submit to the ERISA plan administrator. Thus, the District Court properly excluded the five affidavits expressing expert opinions not submitted to UNUM.[2]

---

[2] Supplemental material might be admissible at the District Court level if it were in support of a contention that the administrator was acting in a manner requiring a heightened

14

In her brief, Das makes numerous claims that the GENEX Report on which both UNUM and the District Court relied was replete with "incorrect information and erroneous and untruthful findings." (Das's Brief at 3). Because the District Court relied totally on the GENEX Report, Das argues, its judgment is erroneous as a matter of law.

Although its conclusions were challenged, the GENEX Report was not challenged as factually erroneous and false in the District Court. This is a new charge, raised on this appeal for the first time. It is based largely upon generalized characterizations critical of the Report that Das expresses in her brief. She refers to telephone conferences and e-mail communications she has had with persons named in the Report. She describes attempts she has made to communicate with persons or entities named in the Report. She recites that communications she sent to entities named in the Report have been returned. She describes at considerable length her unsuccessful efforts to verify the information GENEX set forth in its Report. Her independent investigation is the basis for her contention that much of the information in the Report is false.

Based upon her investigations Das urges that the "Honorable third circuit may note that UNUM and GENEX have abused the trust of Justice system as District Judge Honorable Timothy J. Savage, Jr. has completely relied on their survey to give his order to deny the disability benefit of a disabled person with 98% hearing loss and causing a lot [of ] inconvenience for a totally hearing impaired person with an untruthful survey."

standard of review. Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377 (3d Cir. 2000). The affidavits that the District Court struck did not address that issue.

15

(Das's Brief at 17).

We recognize that Das is proceeding *pro se*, which undoubtedly explains why she has submitted on this appeal and relied upon material that we cannot consider. Neither her argument that the GENEX Report was erroneous and false nor the allegations supporting that argument were presented to the District Court (proceedings in which Das was represented by counsel). "[A] failure to raise an issue in the District Court constitutes a waiver of the argument." Brenner v. United Bhd. of Carpenters and Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991).

Having determined that the District Court correctly struck the five affidavits that Das sought to submit, and that Das waived her argument that the District Court (and UNUM) relied on an erroneous and false GENEX Report, we turn to Das's remaining contention that the District Court erred in granting UNUM's motion for summary judgment. We have reviewed the extensive record in this case and, exercising plenary review, affirm the judgment of the District Court substantially for the reasons set forth in Judge Savage's comprehensive opinion.

## IV. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.